# EXHIBIT A

Case 1:08-cv-00639    Document 47-2    Filed 06/24/2008    Page 1 of 20

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 639 | **DATE** | 3/5/2008 |
| **CASE TITLE** | Manhattan National life Insurance Company vs. Associated Bank, et al | | |

**DOCKET ENTRY TEXT**

Status hearing set for 5/6/2008 at 9:00 a.m. Defendants' given to 5/6/2008 in which to answer or otherwise plead. Manhattan National Life Insurance Company is dismissed.

Docketing to mail notices.

00:10

Courtroom Deputy Initials: WAP

08C639 Manhattan National life Insurance Company vs. Associated Bank    Page 1 of 1

# EXHIBIT B

## RELEASE OF LIEN

IN CONSIDERATION for the settlement of all claims brought by Associated Bank, N.A. ("Associated") against Peter W. Nauert ("Nauert"), the Estate of Peter W. Nauert ("Estate") and/or the Peter W. Nauert Family Trust under an agreement dated March 18, 1997 ("Trust") in regard to any indebtedness due from or guaranteed by Nauert, the Estate or the Trust ("Indebtedness"), Associated does hereby waive and release the Trust and Michael Cavataio, as Trustee of the Trust ("Trustee"), and all their related and affiliated entities, officers, employees, agents, beneficiaries, successors and assigns, of and from any and all claims, by lien or otherwise, (i) for any liability in regard to the Indebtedness and (ii) for any portion or all of the proceeds from Great American Life insurance policies no. AA9703204 and AA9703204A ("Policies"), which Policies were or may have been assigned to Associated as collateral for the Indebtedness or as collateral for any other obligation due to Associated by Nauert, the Estate or the Trust, including but not limited to those Assignments of Life Insurance as Collateral dated on or about January 22, 2003, February 5, 2003, February 23, 2002, and October 28, 2004. (*See* various Assignments of Life Insurance as Collateral, attached hereto as Exhibits A-D)

Associated also does hereby waive and release the Trust, the Trustee and all their related and affiliated entities, officers, employees, agents, beneficiaries, successors and assigns of and from any and all liability, loss, expense, actions, causes of action, suits, debts, accounts, covenants, contracts, claims and demands against the Trust or the Trustee, individually or in a fiduciary capacity, for any actions or inactions relating to the Indebtedness or the assignment of the Policies as collateral for any loan.

Dated: __4/30__, 2008

                                                ASSOCIATED BANK, N.A.

                                                By: _____

                                                Its __SVP__

Assignment of Life Insurance as Collateral

Conseco.

A. For value received the undersigned hereby assign, transfer and set over to Associated Bank Chicago, 200 East Randolph Street, Chicago, IL 60601 of Chicago, IL its successors and assigns, (herein called the "Assignee") Policy No. AA9703204 issued by the Manhattan National Life Company aka Conseco (herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "Policy"), upon the life of Peter H. Naupet SS# 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 of Chicago, IL and all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof) subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

B. It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof:
 1. The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;
 2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;
 3. The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, if any time, from other persons, and to pledge or assign the Policy as security for such loans or advances;
 4. The sole right to collect and receive all distributions or share of surplus, dividend deposits or additions to the Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided, that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment; and
 5. The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:
 1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;
 2. The right to designate and change the beneficiary;
 3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

D. This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called "Liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:
 1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed;
 2. That the Assignee will not exercise either the right to surrender the Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the address last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and
 3. That the Assignee will upon request forward without unreasonable delay to the Insurer the Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement.

F. The Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E(2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefore to the Insurer. Checks for all or any part of the sums payable under the Policy and assigned herein, shall be drawn to the exclusive order to the Assignee if, when, and in such amounts as may be, requested by the Assignee.

CL-CA 12/98


EXHIBIT A

G. The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or encumbrances on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, but any such amount so paid by the Assignee from its own funds, shall become a part of the Liabilities hereby secured, shall be due immediately, and shall draw interest at a rate fixed by the Assignee from time to time.

H. The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee. Upon payment of all Liabilities hereby secured the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

I. The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise of any right permitted under this assignment, without resorting to or regard to other security.

J. In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the Policy or rights of collateral security therein, the provisions of this assignment shall prevail.

K. Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to any assignment for the benefit of creditors.

Signed and sealed this 23rd day of February, 2002

_____   _____ Trustee
John A. Hichman               3125 Ramsgate Road, Rockford, IL

_____   _____
Thaddeus Brown

**INDIVIDUAL ACKNOWLEDGEMENT**

STATE OF IL
COUNTY OF Cook

On the 23rd day of February, 2002 before me personally came Michael A Covatato, trustee, to me known to be the individual described in and who executed the assignment herein and acknowledged to me that he executed the same.

My commission expires 06-20-05

"OFFICIAL SEAL"
MICHAEL K. OWENS, JR.
COMMISSION EXPIRES 06/20/05

**CORPORATE ACKNOWLEDGEMENT**

STATE OF _____
COUNTY OF _____

On the _____ day of _____, ____ before me personally came _____ who being by me duly sworn, did depose and say that he resides in _____, that he is the _____ of the corporation described in and which executed the assignment herein; that he knows the seal of said corporation; that the seal affixed to said assignment is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

My commission expires _____

Duplicate received and filed at the home office of the Insurer in Carmel this 28th day of February, 2002. Assumes no responsibilities as to the validity of said assignment.        By _____
                                                                                     David K. Herzog, Secretary

TOTAL P.03

ASSIGNMENT OF
LIFE INSURANCE POLICY
AS COLLATERAL

A. For value received, the undersigned hereby assign, transfer and set over to Associated Bank, A State Banking Association, its successors and assigns, (therein called the "Assignee") Policy No.: AA9703204 issued by Manhattan National Life Insurance Company (herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and supplementary contracts being herein collectively referred to as the "Policy"), upon the life of Peter Nauert of 1 West Superior, Chicago, Illinois, 60610, and all claims, options, privileges, rights, title and interest thereon and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this Assignment agrees to the conditions and provisions set forth herein.

B. It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass to Assignee by virtue hereof:

1. The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;

2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;

3. The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at the time, from other persons, and to pledge or assign the Policy as security for such loans or advances;

4. The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this Assignment; and

5. The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this Assignment and do not pass by virtue hereof:

1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;

2. The right to designate and change the beneficiary under the Policy;



EXHIBIT B

3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this Assignment and to the rights of the Assignee hereunder.

D. This Assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called "Liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:

1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this Assignment not been executed;

2. That the Assignee will not exercise either the right to surrender the Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been a default in any of the Liabilities or a failure to pay any premium when due, nor until twenty (20) calendar days after the Assignee shall have mailed, by first-class mail, to the undersigned at the address last supplied in writing to the Assignee specifically referring to this Assignment, notice of Assignee's intention to exercise such right; and

3. That the Assignee will, upon request, forward without unreasonable delay to the Insurer, the Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement.

F. The Insurer is hereby authorized to recognize the Assignee's claim to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E(2) above or otherwise, or the application to be made the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefor to the Insurer. Checks for all or any part of the Sums payable under the Policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be, requested by the Assignee.

G. The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, by any such amounts so paid by the Assignee from its own funds, shall become a part of the Liabilities secured hereby, shall be due immediately, and shall accrue interest at a rate fixed by the Assignee from time to time not exceeding 12% per annum.

2

H.  The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned, by the undersigned or any of them.

I.  The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise or any right permitted under this Assignment, without resorting or regard to other security.

J.  In the event of any conflict between the provisions of this Assignment and provisions of the promissory note or other evidence of any Liability, with respect to the Policy or rights of collateral security therein, the provisions of this Assignment shall prevail.

K.  Each of the undersigned declares that no proceedings in bankruptcy are pending against him or her and that his or her property is not subject to any assignment for the benefit or creditors.

Signed and sealed this 23rd day of January, 2002.

Witness: _____

Policyholder: _____
Address: 1 WEST SUPERIOR
#2701
CHICAGO IL 60610

Witness: _____

Beneficiary: Associated Bank, $2,000,000.00
_____

Witness: _____

Address: 200 E RANDOLPH
CHICAGO IL 60601

3

STATE OF ILLINOIS
COUNTY OF COOK

I, __MIKE OWENS__, Notary Public in and for said county and state, do hereby certify that __PETER NAVERT__ the person whose name has been signed to the foregoing instrument, appeared before me this day in person and acknowledged that having read the said instrument, he/she signed, sealed and delivered the same as his/her free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and notarial seal this __30th__ day of __JANUARY__, 2002.

_____(seal)
Notary Public

My commission expires __06/20/05__

"OFFICIAL SEAL"
MICHAEL K. OWENS, JR.
COMMISSION EXPIRES 06/20/05


STATE OF ILLINOIS
COUNTY OF COOK

I, _____, Notary Public in and for said county and state, do hereby certify that _____ the person whose name has been signed to the foregoing instrument, appeared before me this day in person and acknowledged that having read the said instrument, they signed, sealed and delivered the same as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and notarial seal this _____ day of _____, 2002.

_____(seal)
Notary Public

My commission expires _____

065120194\A:LIFE_INS.RV1

6

FEB-05-2002 15:58    P NAUERT CERES    312 827 5020    P.02

## Assignment of Life Insurance as Collateral



EXHIBIT C

CONSECO.

A. **For Value Received** the undersigned hereby assign, transfer and set over to <u>Associated Bank Chicago</u> <u>200 East Randolph Street, Chicago, IL 60601</u> of <u>Chicago, IL</u> its successors and assigns, (herein called the "Assignee") Policy No. <u>AA9703204</u> issued by the <u>Manhattan National Life Company aka Conseco</u> (herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "Policy"), upon the life of <u>Peter W. Nauert</u> SS# <u>338.36.7197</u> of <u>Chicago, IL</u> and all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

B. It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof:
   1. The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;
   2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;
   3. The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at any time, from other persons, and to pledge or assign the Policy as security for such loans or advances;
   4. The sole right to collect and receive all distributions or share of surplus, dividend deposits or additions to the Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided, that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment; and
   5. The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:
   1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;
   2. The right to designate and change the beneficiary;
   3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

D. This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called "Liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:
   1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed;
   2. That the Assignee will not exercise either the right to surrender the Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the addresses last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and
   3. That the Assignee will upon request forward without unreasonable delay to the Insurer the Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of

G. The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, but any such amounts so paid by the Assignee from its own funds, shall become a part of the Liabilities hereby secured, shall be due immediately, and shall draw interest at a rate fixed by the Assignee from time to time.

H. The exercise of any right, option, privilege or power given herein to m Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E(2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

I. The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.

J. In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the Policy of rights of collateral security therein, the provisions of this assignment shall prevail.

K. Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to any assignment for the benefit of creditors.

Signed and sealed this __Fifth__ day of __February__ 19__2002__.

_____   _____(L.S.)
Witness                           Owner (if other than Insured)
John A. Wichman                   200 West Madison Street, Suite 550
                                  Address

_____   _____(L.S.)
Witness                           Beneficiary
Thaddeus Brown                    _____
                                  Address

### INDIVIDUAL ACKNOWLEDGEMENT

STATE OF __IL__
                    ss:
COUNTY OF __Cook__

On the __Fifth__ day of __February__ 19__2002__, before me personally came __Peter W. Nauert__, to me known to be the __individual__ described in and who executed the assignment herein and acknowledged to me that __he__ executed the same.

My commission expires __06-20-05__      _____
                                         Notary Public

"OFFICIAL SEAL"
MICHAEL K. OWENS, JR.
COMMISSION EXPIRES 06/20/05

### CORPORATE ACKNOWLEDGEMENT

STATE OF _____
                    ss:
COUNTY OF _____

On the _____ day of _____ 19_____, before me personally came _____, who being by me duly sworn, did depose and say that he resides in _____ that he is the _____ of the corporation described in and which executed the assignment herein; that he knows the seal of said corporation; that the seal affixed to said assignment is such corporate seal; that it was so affixed by the order of the

## ASSIGNMENT OF
## LIFE INSURANCE POLICY
## AS COLLATERAL

A.  For value received, the undersigned hereby assign, transfer and set over to Associated Bank, A State Banking Association, its successors and assigns, (therein called the "Assignee") Policy No.: AA9703204 issued by Manhattan National Life Insurance Company (herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and supplementary contracts being herein collectively referred to as the "Policy"), upon the life of Peter Nauert of 25 E. Superior, Chicago, Illinois, 60611, and all claims, options, privileges, rights, title and interest thereon and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this Assignment agrees to the conditions and provisions set forth herein.

B.  It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass to Assignee by virtue hereof:

1.  The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;

2.  The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;

3.  The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at the time, from other persons, and to pledge or assign the Policy as security for such loans or advances;

4.  The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additional shall continue on the plan in force at the time of this Assignment; and

5.  The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

C.  It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this Assignment and do not pass by virtue hereof;

EXHIBIT D

1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;

2. The right to designate and change the beneficiary under the Policy;

3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this Assignment and to the rights of the Assignee hereunder.

D. This Assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called "Liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:

1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy has this Assignment not been executed;

2. That the Assignee will not exercise either the right to surrender the Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been a default in any of the Liabilities or a failure to pay any premium when due, nor until twenty (20) calendar days after the assignee shall have mailed, by first-class mail, to the undersigned at the address last supplied in writing to the Assignee specifically referring to this Assignment, notice of Assignee's intention to exercise such right; and

3. That the Assignee will, upon request, forward without unreasonable delay to the Insurer, the Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement.

F. The Insurer is hereby authorized to recognize the Assignee's claim to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E(2) above or otherwise, or the application to be made the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefore to the Insurer. Checks for all or any part of the Sums payable under the Policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be, requested by the Assignee.

2

G. The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, by any such amounts so paid by the Assignee from its own funds, shall become a part of the Liabilities secured hereby, shall be due immediately, and shall accrue interest at a rate fixed by the Assignee from time to time not exceeding 12% per annum.

H. The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by paragraph E (2) above) the Assignee may exercise any such right, option, privilege without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned, by the undersigned or any of them.

I. The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extension, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise of any right permitted under this Assignment, without resorting or regard to other security.

J. In the event of any conflict between the provisions of this Assignment and provisions of the promissory note or other evidence of any liability, with respect to the Policy or rights of collateral security therein, the provisions of this Assignment shall prevail.

K. Each of the undersigned declares that no proceedings in bankruptcy are pending against him or her and that his or her property is not subject to any assignment for the benefit or creditors.

Signed and sealed this 28th day of OCTOBER 2004.

Witness: _____

Policy holder: _____
Address: 23 East Superior, #1205
Chicago, IL 60611

Witness: _____

Beneficiary: Associated Bank, $2,000,000.00
_____
Michael Vlahandreas, Vice President
Address: 200 E. Randolph Dr.
Chicago, IL 60601

3

STATE OF ILLINOIS
COUNTY OF COOK

I, **MIKE OWENS** Notary Public in and for said county and state, do hereby certify that **PETER NAUERT** the person whose name has been signed to the foregoing instrument, appeared before me this day in person and acknowledged that having read the said instrument, he/she signed, sealed and delivered the same as his/her free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and notarial seal this 28th day of OCTOBER, 2004.

"OFFICIAL SEAL"
MICHAEL K. OWENS, JR.
COMMISSION EXPIRES 06/20/05

(seal)
Notary Public

My commission expires 06-20-05


STATE OF ILLINOIS
COUNTY OF COOK

I, **Flavio I. Ruiz** Notary Public in and for said county and state, do hereby certify that ~~Michael Villamor~~ the person whose name has been signed to the foregoing instrument, appeared before me this day in person and acknowledged that having read the said instrument, he/she signed, sealed and delivered the same as his/her free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and notarial seal this 28th day of October, 2004.

(seal)
Notary Public

My commission expires

"OFFICIAL SEAL"
FLAVIO I RUIZ
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 01/23/2008

4

# EXHIBIT C

Form **712**
(Rev. April 2006)
Department of the Treasury
Internal Revenue Service

# Life Insurance Statement

OMB No. 1545-0022

**Part I**   **Decedent—Insured** (To be filed by the executor with Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, or Form 706-NA, United States Estate (and Generation-Skipping Transfer) Tax Return, Estate of nonresident not a citizen of the United States.)

| 1 Decedent's first name and middle initial | 2 Decedent's last name | 3 Decedent's social security number (if known) | 4 Date of death |
|---|---|---|---|

5   Name and address of insurance company

| 6 Type of policy | 7 Policy number |
|---|---|

| 8 Owner's name. If decedent is not owner, attach copy of application. | 9 Date issued | 10 Assignor's name. Attach copy of assignment. | 11 Date assigned |
|---|---|---|---|

| 12 Value of the policy at the time of assignment | 13 Amount of premium (see instructions) | 14 Name of beneficiaries |
|---|---|---|

15   Face amount of policy . . . . . . . . . . . . . . . . . . . . . . . . .    **15** $
16   Indemnity benefits . . . . . . . . . . . . . . . . . . . . . . . . . . .    **16** $
17   Additional insurance . . . . . . . . . . . . . . . . . . . . . . . . . .    **17** $
18   Other benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **18** $
19   Principal of any indebtedness to the company that is deductible in determining net proceeds .    **19** $
20   Interest on indebtedness (line 19) accrued to date of death. . . . . . . . . . . .    **20** $
21   Amount of accumulated dividends . . . . . . . . . . . . . . . . . . . .    **21** $
22   Amount of post-mortem dividends . . . . . . . . . . . . . . . . . . . .    **22** $
23   Amount of returned premium . . . . . . . . . . . . . . . . . . . . . .    **23** $
24   Amount of proceeds if payable in one sum . . . . . . . . . . . . . . . .    **24** $
25   Value of proceeds as of date of death (if not payable in one sum) . . . . . . . . .    **25** $
26   Policy provisions concerning deferred payments or installments.
     **Note.** If other than lump-sum settlement is authorized for a surviving spouse, attach a copy of the insurance policy.

     ................................................................
     ................................................................

27   Amount of installments . . . . . . . . . . . . . . . . . . . . . . . .    **27** $
28   Date of birth, sex, and name of any person the duration of whose life may measure the number of payments.

     ................................................................
     ................................................................

29   Amount applied by the insurance company as a single premium representing the purchase of installment benefits . . . . . . . . . . . . . . . . . . . . . . .    **29** $
30   Basis (mortality table and rate of interest) used by insurer in valuing installment benefits.

     ................................................................

31   Were there any transfers of the policy within the three years prior to the death of the decedent? . . . ☐ Yes   ☐ No
32   Date of assignment or transfer: _____ / _____ / _____
                               Month   Day   Year
33   Was the insured the annuitant or beneficiary of any annuity contract issued by the company? . . . . ☐ Yes   ☐ No
34   Did the decedent have any incidents of ownership on any policies on his/her life, but not owned by him/her at the date of death? . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes   ☐ No
35   Names of companies with which decedent carried other policies and amount of such policies if this information is disclosed by your records.

     ................................................................
     ................................................................

The undersigned officer of the above-named insurance company (or appropriate federal agency or retirement system official) hereby certifies that this statement sets forth true and correct information.

Signature ▶                         Title ▶                       Date of Certification ▶

**For Paperwork Reduction Act Notice, see page 3.**      Cat. No. 10170V      Form **712** (Rev. 4-2006)

Form 712 (Rev. 4-2006) Page **2**

## Part II  Living Insured

(File with Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return. May also be filed with Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, or Form 706-NA, United States Estate (and Generation-Skipping Transfer) Tax Return, Estate of nonresident not a citizen of the United States, where decedent owned insurance on life of another.)

### SECTION A—General Information

| 36 First name and middle initial of donor (or decedent) | 37 Last name | 38 Social security number |
|---|---|---|

| 39 | Date of gift for which valuation data submitted . . . . . . . . . . . . . . . . ▶ | |
|---|---|---|
| 40 | Date of decedent's death for which valuation data submitted . . . . . . . . . . ▶ | |

### SECTION B—Policy Information

| 41 Name of insured | 42 Sex | 43 Date of birth |
|---|---|---|

| 44 Name and address of insurance company |
|---|
| |

| 45 Type of policy | 46 Policy number | 47 Face amount | 48 Issue date |
|---|---|---|---|

| 49 Gross premium | 50 Frequency of payment |
|---|---|

| 51 Assignee's name | 52 Date assigned |
|---|---|

| 53 If irrevocable designation of beneficiary made, name of beneficiary | 54 Sex | 55 Date of birth, if known | 56 Date designated |
|---|---|---|---|

57  If other than simple designation, quote in full. Attach additional sheets if necessary.

58 **If policy is not paid up:**
  a  Interpolated terminal reserve on date of death, assignment, or irrevocable designation of beneficiary . . . . . . . . . . . . . . . . . . . . . . .  **58a**
  b  Add proportion of gross premium paid beyond date of death, assignment, or irrevocable designation of beneficiary . . . . . . . . . . . . . .  **58b**
  c  Add adjustment on account of dividends to credit of policy . . . . .  **58c**
  d  **Total.** Add lines 58a, b, and c . . . . . . . . . . . . . . . . . . . . . .  **58d**
  e  Outstanding indebtedness against policy . . . . . . . . . . . . . . . . . . . .  **58e**
  f  Net total value of the policy (for gift or estate tax purposes). Subtract line 58e from line 58d  **58f**

59  **If policy is either paid up or a single premium:**
  a  Total cost, on date of death, assignment, or irrevocable designation of beneficiary, of a single-premium policy on life of insured at attained age, for original face amount plus any additional paid-up insurance (additional face amount $ _____ )  . . . . . . . . . . . . . .  **59a**

  (If a single-premium policy for the total face amount would not have been issued on the life of the insured as of the date specified, nevertheless, assume that such a policy could then have been purchased by the insured and state the cost thereof, using for such purpose the same formula and basis employed, on the date specified, by the company in calculating single premiums.)

  b  Adjustment on account of dividends to credit of policy . . . . . . .  **59b**
  c  **Total.** Add lines 59a and 59b . . . . . . . . . . . . . . . . . . . . . . .  **59c**
  d  Outstanding indebtedness against policy . . . . . . . . . . . . . . . . . . .  **59d**
  e  Net total value of policy (for gift or estate tax purposes). Subtract line 59d from line 59c . . . . . .  **59e**

The undersigned officer of the above-named insurance company (or appropriate federal agency or retirement system official) hereby certifies that this statement sets forth true and correct information.

Signature ▶                                    Title ▶                                    Date of Certification ▶

Form **712** (Rev. 4-2006)

## Instructions

**Statement of insurer.** This statement must be made, on behalf of the insurance company that issued the policy, by an officer of the company having access to the records of the company.

For purposes of this statement, a facsimile signature may be used in lieu of a manual signature and if used, shall be binding as a manual signature.

**Separate statements.** File a separate Form 712 for each policy.

**Line 13.** Report on line 13 the annual premium, not the cumulative premium to date of death.

If death occurred after the end of the premium period, report the last annual premium.

**Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. You are required to give us the information. We need it to ensure that you are complying with these laws and to allow us to figure and collect the right amount of tax.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number.

Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law.

Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file this form will vary depending on individual circumstances.

The estimated average time is:

**Recordkeeping** . . . . . . . . . 18 hrs., 11 min.
**Learning about the form** . . . . . . . . . 6 min.
**Preparing the form** . . . . . . . . . . . 23 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making this form simpler, we would be happy to hear from you.

See the instructions for the tax return with which this form is filed. Do not send the tax form to that office. Instead, return it to the executor or representative who requested it.

Printed on recycled paper